UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
AARON DARNELL GRANT,                )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   Civil Action No. 15-1008 (RMC)
                                    )
STEVEN T. MNUCHIN, Secretary,       )
United States Department of Treasury,)
                                    )
        Defendant.                  )
_____ )

MEMORANDUM OPINION

In June 2015, Aaron Darnell Grant filed a Complaint that appealed the 2015 Final Order issued by the Merit Systems Protection Board (MSPB or Board) sustaining his discharge from the Department of the Treasury in 2013. Appearing *pro se,* Mr. Grant asserted that the 2015 Final Order did not sufficiently weigh his proffered explanations for his conduct against Treasury's reasons for discharge. Secretary of the Treasury Steven T. Mnuchin, sued in his official capacity, moved for summary judgment; Mr. Grant opposed; and the Court granted summary judgment in favor of Treasury. While the motion for summary judgment was pending, Mr. Grant moved for an emergency telephone conference with the Court concerning possible fraud in the underlying investigation and reporting that were used to support his termination. The Court granted the motion, heard arguments from both parties about the underlying report, and received supplemental briefs. When it granted summary judgment to Treasury, the Court explained why Mr. Grant's allegations of fraud did not cause the Court to question MSPB's decision and did not affect the merits. Now pending is Mr. Grant's motion for reconsideration.

1

# I. FACTS

The Memorandum Opinion on summary judgment recited the facts in detail; for present purposes, only the specific facts relevant to the motion for reconsideration will be mentioned. *See Grant v. Mnuchin*, 373 F. Supp. 3d 286, 290-94 (D.D.C. 2019).

Aaron Darnell Grant worked as a Special Agent conducting criminal investigations for the Internal Revenue Service (IRS or Agency), an agency within the Department of the Treasury. He was discharged for various forms of misconduct in 2010. *See* 9/28/17 Mem. Op. [Dkt. 29]. Mr. Grant was reinstated to the IRS on September 4, 2012, after the MSPB found errors in the Agency's handling of his discharge but without reaching its merits.[1] *See* Notice, Ex. 32, 2014 MSPB Initial Decision, AR 4190-91.[2] By notice dated December 7, 2012, the Agency informed Mr. Grant that it was proposing his removal again for three separate reasons: (1) being less than candid in a matter of official business (lack of candor); (2) failing to follow established Agency procedures; and (3) failing to cooperate in an official investigation. Notice, Ex. 18, Second Proposal to Remove (Second Proposal), AR 217-18. The Second Proposal also recited the materials the Agency relied upon in proposing Mr. Grant's removal, notified Mr. Grant of his right to review those materials, and provided contact

---

[1] The Board reinstated Mr. Grant with full backpay because of inappropriate communications between the Proposing Official and the Deciding Official concerning his discharge. *See* Def.'s Partial Mot. to Dismiss Or, Alternatively, Partial Mot. for Summ. J., Ex. D, 2012 MSPB Final Order [Dkt. 25-5] at 2.

[2] The relevant portions of the Administrative Record are exhibits to Def.'s Notice of Filing Exhibits from Administrative Record (Notice) [Dkt. 54]. Each exhibit contains multiple documents, which are set out in an exhibit list filed with the Notice. *See* Notice, List of Exhibits [Dkt. 54-2] (Ex. 1 contains Exs. 1-20 [Dkt. 54-3]; Ex. 2 contains Exs. 21-25 [Dkt. 54-4]; Ex. 3 contains Exs. 26-33 [Dkt. 54-5]). The Court cites to Defendant's exhibit numbers as set out in the exhibit list, rather than the ECF exhibit numbers 1-3.

information for the Agency's Human Resources Specialist to whom he should address his request for the materials. *Id*. at AR 219-20.

On January 30, 2013, the Agency notified Mr. Grant that it had sustained all reasons and specifications in the Second Proposal and that his removal was effective as of that date. Notice, Ex. 29, 1/30/13 Decision Sustaining Second Proposed Removal (Second Removal), AR 202-05. The Deciding Official was Sean P. Sowards, Deputy Director, Criminal Investigation. *Id*. On December 11, 2013, Mr. Grant appealed the Second Removal to MSPB and alleged that the IRS had discriminated and retaliated against him when it discharged him, due to his disability and prior protected activity. On July 17, 2014, MSPB Administrative Judge Andrew Niedrick issued an Initial Decision in which he sustained the Agency's findings on all charges and specifications that were the basis for Mr. Grant's Second Removal. Notice, Ex. 32, 2014 MSPB Initial Decision, AR 4158-213. Mr. Grant filed a timely Petition for Review by the MSPB. The two sitting members of the MSPB affirmed the Administrative Judge's decision on May 27, 2015, modifying it only to "clarify the administrative judge's analysis that [Mr. Grant] failed to prove his due process claims." Notice, Ex. 33, 2015 MSPB Final Order, AR 4472.

Mr. Grant filed his Complaint in this Court on June 26, 2015, filed an Amended Complaint [Dkt. 7] on November 11, 2015, and a Second Amended Complaint [Dkt. 23] on August 19, 2016; it is the Second Amended Complaint which is operative and is hereafter called the Complaint. The Complaint alleged violations of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq*., Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*., and the Rehabilitation Act of 1973 (Rehab Act), 29 U.S.C. § 701 *et seq*. On the government's motion for partial summary judgment, this Court reviewed Mr. Grant's discrimination claims under Title VII and the Rehab Act *de novo*. *Barnes v. Small*, 840 F.2d

3

972, 979 (D.C. Cir. 1988). Those discrimination and retaliation allegations were dismissed on September 28, 2017, leaving open for review Mr. Grant's appeal of MSPB's decision under the CSRA. *See* 9/28/17 Mem. Op.; 9/28/17 Order [Dkt. 30]. The government moved for summary judgment on the remaining claims on June 22, 2018 and Mr. Grant opposed. The Court granted summary judgment to the IRS on March 29, 2019. *See* 3/29/19 Mem. Op. [Dkt. 57]; 3/29/19 Order [Dkt. 58].

In November 2018 (before the Memorandum Opinion on summary judgment), Mr. Grant remembered, and recovered from an old phone, photographs of the IRS Special Agents' office configuration as it was in April 2010. That photograph caused him to question the descriptions of events in the 2010 Treasury Inspector General for Tax Administration (TIGTA) Report of Investigation (ROI) (TIGTA Report), so he submitted requests for records to the IRS and TIGTA under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. TIGTA responded on March 15, 2019 and indicated that Mr. Grant's casefile was approximately 351 pages long. *See* Mot. for Recons., Ex. 3, TIGTA FOIA Resp. [Dkt. 59-3] (indicating that the requested documents totaled 351 pages and TIGTA was releasing 141 pages in full and 73 pages in part).

However, on February 5, 2019—almost immediately after the government filed its reply on the motion for summary judgment and before TIGTA answered his FOIA request— Mr. Grant filed an Emergency Motion for Telephonic Conference. In that motion, he asserted *inter alia* that the 2010 TIGTA Report used in the removal proceedings was "fraudulent," and "tampered with by agency officials to hide their misconduct before/during/after the TIGTA investigation." Mot. for Telephonic Conference [Dkt. 50] at 1. On March 28, 2019, after the motion was briefed, the Court conducted a telephone conference with the parties and authorized

4

them to submit more briefs. Mr. Grant argued that the TIGTA Report was fraudulent because portions of the ROI were allegedly inconsistent with the underlying case file. The arguments made in the telephone conference and the briefs were considered and rejected when the Court granted summary judgment to the government. *See Grant*, 373 F. Supp. 3d at 301-03. Mr. Grant now moves for reconsideration.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows a party to move to alter or amend a judgment within 28 days of the entry of judgment. "Motions filed under Rule 59(e) are generally disfavored, and are granted only when the moving party establishes that extraordinary circumstances justify relief." *Moses v. Dodaro*, 856 F. Supp. 2d 99, 102 (D.D.C. 2012) (citing *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)). Motions for reconsideration under Rule 59(e) are "discretionary and need not be granted unless the court finds that there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Nanko Shipping, USA v. Alcoa, Inc.*, 118 F. Supp. 3d 372, 375 (D.D.C. 2015) (quoting *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006)). To constitute clear error, "[a] final judgment must be 'dead wrong.'" *Id.* (quoting *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)).

"Rule 59(e) . . . 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Wright & Miller, Fed. Prac. and Proc. § 2810.1 (2d ed. 1995)); *see also Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F.

---

[3] *See* Pl.'s Mot. for Recons. of the Final Order; Request for New Trial and/or Altering or Amending the J. (Mot. to Recons.) [Dkt. 59]; Def.'s Opp'n to Pl.'s Mot. for Recons. of the Final Order (Opp'n to Recons.) [Dkt. 65]; Pl.'s Resp. to Def.'s Opp'n to Pl.'s Mot. for Recons. of the Final Order (Reply re Recons.) [Dkt. 66].

Supp. 2d 5, 10 (D.D.C. 2011) ("In this Circuit, it is well-established that motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.") (internal citations omitted).

### III. ANALYSIS

Liberally reading Mr. Grant's *pro se* motion, the Court interprets his arguments for reconsideration to advance the following reasons: (1) the TIGTA case file is newly discovered evidence that was not part of the Court's challenged decision; (2) the Court committed error in not finding that Mr. Grant should have been advised of his *Miranda*[4] rights prior to his interview with the TIGTA investigators; and (3) the Court erred in considering the TIGTA ROI because it was inadmissible hearsay and it was not certified or authenticated. The government responds that Mr. Grant is not entitled to reconsideration because (1) evidence from the TIGTA case file is not "new" as it has been available to Mr. Grant since 2010 although he failed to request it; and (2) the Court has already considered Mr. Grant's allegations of fraud and he has provided no sufficient reason to reconsider.

#### A. New Evidence

Mr. Grant argues that the allegedly fraudulent TIGTA ROI is new evidence that requires the Court to reconsider its opinion. He acknowledges that new evidence does not justify reconsideration unless it was unavailable when the decision was made and that his allegations of fraud do not rest on previously-unavailable evidence. However, Mr. Grant argues that because he is *pro se* he should be permitted to file "supplemental materials with a motion for reconsideration to clarify his claims." Mot. to Recons. at 21-22 (citing *Greenhill v. Spellings*,

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

6

482 F.3d 569, 572 (D.C. Cir. 2007) and *Anyanwutaku v. Moore*, 151 F.3d 1053, 1054 (D.C. Cir. 1998)). In *Greenhill*, the Circuit acknowledged that it has "permitted courts to consider supplemental material filed by a *pro se* litigant in order to clarify the precise claims being urged," but did not require district courts to reconsider prior decisions based on supplemental arguments of *pro se* plaintiffs. 482 F.3d at 572. *Anyanwutaku* excused a *pro se* plaintiff who filed an inartful claim that he clarified in a motion to reconsider after it was dismissed; the Circuit held that the plaintiff should have been granted reconsideration and permitted to amend his complaint under the liberal pleading standards applied to *pro se* litigants. *Anyanwutaku*, 151 F.3d at 1058.

      Consistent with this Circuit precedent, this Court recognized Mr. Grant's status and admitted supplemental information in the motion for a telephone conference, the telephone conference itself, and the later briefing concerning Mr. Grant's claims that the TIGTA ROI was fraudulent. All of that information has already been considered in granting summary judgment to the government. *See Grant*, 373 F. Supp. 3d at 301-03. Despite Mr. Grant's protestations, there was insufficient evidence to question the validity of the ROI. Mr. Grant cannot now claim that he was unaware of the possibility that additional documents existed in his TIGTA case file: as he acknowledges, his counsel during the initial MSPB proceeding filed a discovery request which was denied and he personally filed a discovery request seeking "all items pertaining to the TIGTA investigation report" in 2014 during the second MSPB proceeding. Reply re Recons. at 15-16. Mr. Grant does not explain how he knew to request documents in 2014 but failed to do so in this related litigation concerning his second discharge. Instead Mr. Grant waited until November 2018 when he submitted FOIA requests directly to the agencies. Such documents were not "unavailable" but unsought and, therefore, do not constitute "new evidence."

Despite the late arrival of the documents, the Court did consider all of Mr. Grant's arguments about the alleged fraud in the TIGTA ROI, which he repeats on reconsideration. A Rule 59(e) motion to reconsider cannot be used to reargue the same issues and facts previously considered by the Court. Mr. Grant offers no new evidence and no new arguments. The motion to reconsider based on new evidence will be denied.

### B. Lack of *Miranda* Warning

Mr. Grant also argues that the Court erred by not finding his 2010 statements to the TIGTA investigators inadmissible because he did not receive *Miranda* warnings.[5] He insists that the TIGTA investigation was always criminal in nature and, therefore, the investigators were required to inform him of his Fifth Amendment right not to answer their questions. This argument has also been considered and rejected by the Court in the past. In its Memorandum Opinion on summary judgment, the Court concluded:

> The Board considered [Mr. Grant's Fifth Amendment argument] but found that a federal employee has a Fifth Amendment privilege not to answer questions during an administrative investigation only if he reasonably believes that his statements could be used against him in a criminal proceeding, which did not apply to the TIGTA civil investigation as of April 30, 2010. Notice, Ex. 33, 2015 MSPB Final Order, AR 4479; *see also Weston v. U.S. Dep't of Housing and Urban Dev.*, 724 F.2d 943, 947-48 (Fed. Cir. 1983); 2nd Am. Compl. ¶ 15 n.11 ("TIGTA submitted the investigative file to the United States Attorney Office (USAO) for criminal prosecution on June 15, 2010. USAO declined to accept the case for prosecution on July 14, 2010.").

---

[5] A *Miranda* warning provides an individual with notice of his right to counsel and to remain silent as provided by the Fifth Amendment. *See Miranda*, 384 U.S. at 444-45 ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."); *see also* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself.").

*Grant*, 373 F. Supp. 3d at 300-01.  Based on the facts that Mr. Grant was interviewed by TIGTA investigators in April and May 2010 and that the United States Attorney's Office was not contacted until July 2010, the Court agreed—and agrees—with MSPB that Mr. Grant had no right to a *Miranda* warning prior to his interview on a civil matter.

Having been provided with no newly discovered evidence or change in the law that warrants reconsideration of this finding, the Court will also deny Mr. Grant's motion to reconsider on this issue.

### C. Admissibility of TIGTA ROI

Finally, Mr. Grant argues that the TIGTA ROI is inadmissible, and the Court should not have relied on it for its decision on summary judgment because it is hearsay and was not certified or authenticated.  The report submitted to the Court as part of the administrative record was signed by the Special Agent Making the Report, Tracey Giannakoulias, and the Person Examining the Report, Karen Parker.  *See* Notice, Ex. 1, TIGTA ROI at AR 366.  The authenticity of the documents in the administrative record was certified by Robert Mirkov, an attorney in the Office of the Chief Counsel for the IRS.  *See* Notice, Certification of Index [Dkt. 54-1] at 1.  In addition, the copy of the TIGTA ROI produced by Treasury in response to Mr. Grant's FOIA request was certified.  *See* Mot. for Recons., Ex. 1, Treasury FOIA Resp. [Dkt. 59-1].

Rule 59 relief is disfavored and is only justified when "extraordinary circumstances justify relief." *Moses*, 856 F. Supp. 2d at 102.  Mr. Grant has not presented extraordinary circumstances, or even circumstances not previously considered by this Court, to believe that the TIGTA ROI was fraudulent or inadmissible.  Therefore, the Court will deny Mr. Grant's motion to reconsider based on his allegation that the TIGTA ROI was not certified or authenticated.

Mr. Grant's last argument is that the TIGTA ROI is inadmissible because it is hearsay. However, hearsay evidence is admissible in administrative proceedings, like the one before the MSPB which this Court is reviewing. *See Johnson v. United States*, 628 F.2d 187, 190 (D.C. Cir. 1980) ("It has long been settled that the factfinder in an administrative adjudication may consider relevant and material hearsay."). And this Court's role in reviewing a decision of the MSPB is to "reverse the Board's determination if it concludes that the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'; if it was 'obtained without procedures required by law, rule, or regulation being followed'; or, if it is 'unsupported by substantial evidence.'" *Horn v. U.S. Dep't of Army*, 284 F. Supp. 2d 1, 10-11 (D.D.C. 2003) (citing 5 U.S.C. § 7703(c)). As the Court discussed in its memorandum opinion on summary judgment, the MSPB's decision was based in large part on statements made by Mr. Grant himself. *See, e.g., Grant*, 373 F. Supp. 3d at 296 (finding inconsistencies between Mr. Grant's statements in his May 3, 2010 affidavit and his interview on the same day supported the finding of lack of candor); *id*. at 298 (noting that the Board considered Mr. Grant's admission that he was in an accident when evaluating whether he failed to report the collision); *id*. (finding that the Board used Mr. Grant's own admissions "that he was 'driving safely while texting' because he could 'text and still see the road'" as evidence he failed to engage in safe driving); *id*. at 298-99 (finding that "Mr. Grant admitted to TIGTA agents that he consumed several alcoholic beverages on a lunch break during work hours in March 2009 while wearing his Service-issued firearm."). Therefore, even if there were legitimacy to Mr. Grant's complaint that the 2015 MSPB Final Order cited hearsay evidence, which there is not, the non-hearsay evidence is independently sufficient for the Court to find that the MSPB decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, . . . obtained without

procedures required by law, rule, or regulation being followed[,] or . . . unsupported by substantial evidence." *Horn*, 284 F. Supp. 2d at 10-11.

## IV.　CONCLUSION

For the reasons stated above, this Court will deny Mr. Grant's Motion for Reconsideration, Dkt. 59.  A memorializing Order accompanies this Memorandum Opinion.


Date:  November 14, 2019

　　　　　　　　　　　　　　　　　　　　　　ROSEMARY M. COLLYER
　　　　　　　　　　　　　　　　　　　　　　United States District Judge